Opinion
 

 CROSBY, J.
 

 This appeal presents two issues. Is a 1991 amendment to Welfare and Institutions Code section 11350, subdivision (a)(2) to be applied retroactively? It states a noncustodial parent’s reimbursement to the county for welfare benefits paid on behalf of a minor must be equivalent to “[t]he amount of support which would have been specified in an order for the support and maintenance of the family during the period of separation . . . provided that any such amount in excess of the aid paid to the family shall not be retained by the county, but disbursed to the family.” The second issue requires us to decide whether an indigent noncustodial parent is entitled to appointed counsel in responding to an appeal from the superior court’s refusal to enforce the mandate of section 11350.
 

 I
 

 In November 1992, the county sued Clifford Dabbs to establish his paternity of then six-year-old Zachary H., secure a child support order “from
 
 *1002
 
 the date of filing of the [c]omplaint,” and obtain an order for “[t]he amount of support which would have been specified in an order for the support and maintenance of the family during the [almost two years that the minor’s mother received public assistance in the form of Aid to Families with Dependent Children (AFDC)].” (Welf. & Inst. Code, § 11350, subd. (a)(2).) The first two issues were easily resolved at a hearing the following month: Dabbs admitted paternity. Based on his net monthly income of $2,646, the court set child support at $555 a month, beginning January 1, 1993.
 

 The third issue proved more troublesome. Zachary’s mother received approximately $325 per month in AFDC payments between February 1990 and November 1992, for a total of $10,950. Had the current child support guidelines been in effect for the almost two years that Zachary’s mother received public assistance and had Dabbs’s net monthly income remained constant, he would have owed child support of $555 per month during that period as well, for a total support figure of $18,870. Pursuant to Welfare and Institutions Code section 11350, subdivision (a)(2), the county sought judgment in the greater amount, asking that “the excess . . . go to the minor child’s mother.” The court ordered defendant to repay the $10,950 actually expended by the county, at the rate of $50 a month. Without explanation, the court simply denied “reimbursement of any additional amount [Dabbs] might have had [to pay] under [Welfare and Institutions Code section] 11350 . . . .’’An amended order was filed February 10, 1993, reiterating denial of the district attorney’s request to apply subdivision (a)(2) of Welfare and Institutions Code section 11350.
 
 [1]
 

 II
 

 We begin with the second (and secondary) issue, whether Dabbs should receive appointed counsel on appeal.
 
 [2]
 

 Salas
 
 v.
 
 Cortez
 
 (1979) 24 Cal.3d 22 at page 26 [154 Cal.Rptr. 529, 593 P.2d 226] holds, “indigent defendants in
 
 *1003
 
 paternity cases prosecuted by the state [are] constitutionally entitled [under both the federal
 
 [3]
 
 and state Constitutions] to appointed counsel.” The primary rationale is that paternity cases “involve more than monetary judgments. They [are] brought under statutory authority to declare the existence of the most basic biological relationship, that of parent and child. [Citations.] . . . Freedom from an incorrect imposition of that relationship on either a parent or a child is [a] compelling interest.”
 
 (Id.
 
 at pp. 27-28.) Another reason is that “unlike the ordinary civil litigant, [the putative fathers] were opposed by the full resources of the state . . . .”
 
 (Id.
 
 at p. 30.)
 

 County of Ventura
 
 v.
 
 Tillett
 
 (1982) 133 Cal.App.3d 105 [183 Cal.Rptr. 741] extended the
 
 Salas
 
 right to counsel to an indigent mother who stipulated to a judgment for child support and reimbursement of welfare funds under Welfare and Institutions Code section 11350. The court held she was entitled to set aside the judgment because it carried the threat of incarceration and she was deprived of court-appointed counsel: “An indigent defendant in a child support action prosecuted by the district attorney under Welfare and Institutions Code section 11350 is constitutionally entitled to appointment of free counsel to represent him.
 
 (County of Los Angeles
 
 v.
 
 Superior Court [Holley]
 
 (1980) 102 Cal.App.3d 926, 929 [162 Cal.Rptr. 636].) Two of the most significant reasons for this rule are (1) the exposure of the defendant to a deprivation of property and liberty, and (2) the enormous disparity in bargaining power between indigent defendants and the state. [Citing
 
 Salas.]
 
 In the absence of such representation, the defendants in such actions are at a distinct disadvantage. . . . [ft]... If the defendant has not had the assistance of counsel in entering a stipulated judgment with the state, and the judgment carries with it a threat of incarceration, there must be
 
 *1004
 
 a judicial determination on the issue of waiver.”
 
 [4]
 

 (Tillett, supra,
 
 133 Cal.App.3d at pp. 114-115.)
 

 Although
 
 Tillett
 
 is distinguishable because a support order has the potential for incarceration, while a reimbursement order does not
 
 (Crider
 
 v.
 
 Superior Court
 
 (1993) 15 Cal.App.4th 227, 234 [18 Cal.Rptr.2d 757][order under Welfare and Institutions Code section 11350 is “a money judgment in a civil action for debt rather than a child support order” and “may not be enforced by contempt”]), we nonetheless conclude that where the state has appealed and brought its resources to bear against a responding indigent parent, counsel should be appointed. Even if he cannot be jailed, Dabbs faces a significant monetary claim. Under the circumstances of this particular case, appointed counsel is necessary to assure a “level playing field.” (See
 
 Cynthia D.
 
 v.
 
 Superior Court
 
 (1993) 5 Cal.4th 242, 255 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) This is particularly so in the unique situation where the state has elected to represent one private citizen against another. Any other conclusion would, ironically, turn this court into an advocate for the indigent party in a sense; for we would be required to research and marshal the arguments on his side of the retroactivity issue.
 

 Ill
 

 Effective January 1, 1992, Welfare and Institutions Code section 11350 provides:
 

 “(a) In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the noncustodial parent or parents
 
 shall
 
 be obligated to the county for an amount equal to the following:
 

 “(2) The amount of support which would have been specified in an order for the support and maintenance of the family during the period of separation or desertion provided that any such amount in excess of the aid paid to the family shall not be retained by the county, but disbursed to the family.
 

 
 *1005
 
 << “(c)
 
 The amount of the obligation established under paragraph (2) of subdivision (a) shall be determined by using the appropriate child support guidelines currently in effect. . .
 
 ,”
 
 [5]
 
 (Italics added.)
 

 In
 
 County of Alameda
 
 v.
 
 Johnson
 
 (1994) 28 Cal.App.4th 259 [33 Cal.Rptr.2d 483], the Court of Appeal concluded the 1991 amendment, enacted “for the express purpose of providing ‘significant financial penalties for the failure to pay child support’ ”
 
 (id.
 
 at p. 262), is to be applied retroactively to reimbursement claims for welfare benefits paid before its effective date. In our view, “retroactivity [is] clearly implied in the language of the [] amendment.”
 
 (In re Cindy B.
 
 (1987) 192 Cal.App.3d 771, 781 [237 Cal.Rptr. 677].)
 

 Dabbs represented himself in the trial court and, based on the ruling, had virtually no opportunity to challenge the constitutionality of retroactive application of the amendment. He does so on appeal, but we reject the claim. We find no unfairness in permitting the district attorney to pursue reimbursement of the child support Dabbs would have owed in 1990 and 1991. Defendant has always had a statutory obligation to support his child in an amount commensurate with his ability to pay (Fam. Code, § 3900), so the change is largely procedural and remedial in effect.
 
 [6]
 

 We also find no constitutional impediment to an order made today, considering
 
 current
 
 ability to pay, to reimburse the county and provide support to the child that was not forthcoming in the past.
 
 [7]
 
 (See also
 
 In re Marriage of Hyon & Kirschner
 
 (1991) 231 Cal.App.3d 449, 455 [282 Cal.Rptr. 408] [noncustodial parent knew or should have known someone was supporting his child].) The use of the current guidelines might be viewed as a substantive change in the amount owed, but again we think that is more than defensible. Dabbs has had the use of the money in the past, but his child’s needs are in the present and surely exceed the amount of the current order for support. Use of the current guidelines is thus within the reasonable prerogative of the Legislature.
 

 This is not so harsh a result as it may appear. The court has complete discretion to tailor the order, as it did in the case of reimbursement to the
 
 *1006
 
 county ($50 per month), to accommodate the supporting spouse’s financial circumstances; but order reimbursement it must.
 

 The order is reversed insofar as it denies recovery of past support for the child, and the matter is remanded to the superior court with directions to order Dabbs to reimburse the county in accordance with the requisites of Welfare and Institutions Code section 11350. Each side shall bear its own costs. (Cal. Rules of Court, rule 26(a).)
 

 Sills, P. J., and Wallin, J., concurred.
 

 Respondent’s petition for review by the Supreme Court was denied January 19, 1995.
 

 [1]
 

 The circumstances surrounding the execution of the February 10, 1993, “First Amended Order" are not explained in the record. Contrary to Dabbs’s assertion, however, it is apparent the court did not conduct a hearing on that date.
 

 [2]
 

 Appellate Defenders, Inc., recommended appointment, although it advised, “the matter is not clear cut. . . . This case is a paternity case brought by the District Attorney and . . . there is a right to counsel for indigents [in a paternity case] under
 
 Salas
 
 v.
 
 Cortez
 
 (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226], But the main reason for that right is the declaration of paternity, not just the money ordered. Mr. Dabbs admitted paternity; the stated basis of this appeal is the amount of child support ordered, not the fact of it.”
 

 Defendant waived his right to a court-appointed lawyer in the superior court. He initialed a box on a waiver of rights form indicating he understood he had “the right to be represented ... by a lawyer at
 
 all stages of the proceedings until the case is terminated
 
 [and] that if I cannot afford to hire a lawyer, one will be appointed to represent me in this matter, free of charge, if I wish one.
 
 I hereby give up these rights.
 
 I understand the district attorney does not
 
 *1003
 
 represent me.” (Italics added.) This document was signed by Dabbs and the family support officer.
 

 Dabbs’s lawyer argues the trial court found him to be indigent: “[T]he superior court apparently determined that respondent could not afford to hire counsel, despite the fact [of his income]. This is evidenced by the fact the court ordered respondent to pay only $50 a month towards the arrearages.” But there was no express finding of indigency; as noted, defendant waived his right to appointed counsel below.
 

 Defendant’s indigency, at least for purpose of appearing in an appellate court, has been sufficiently established here, however. His application for appointment of counsel reflects his take-home pay is $2,200 and his expenses (including child support and reimbursement ordered in this case) totaled $2,106. His only substantial asset is a $3,500 automobile.
 

 [3]
 

 Under federal due process, the presumption is against appointed counsel unless the indigent litigant’s physical liberty is threatened.
 
 (Lassiter
 
 v.
 
 Department of Social Services
 
 (1981) 452 U.S. 18, 26-27 [68 L.Ed.2d 640, 648-649, 101 S.Ct. 2153]; accord
 
 Walker
 
 v.
 
 State Bar
 
 (1989) 49 Cal.3d 1107,1116 [264 Cal.Rptr. 825, 783 P.2d 184] [generally speaking, there is no due process right to counsel in civil cases; right to counsel exists only where litigant may lose physical liberty if he loses the litigation].) Weighed against the presumption are the private concerns at stake, the government’s interest, and the risk that the procedures used will lead to erroneous decisions.
 
 (Lassiter, supra,
 
 452 U.S. at p. 27 [68 L.Ed.2d at pp. 649-650].)
 

 [4]
 

 Tillett
 
 was disapproved “[t]o the extent that it. . . [holds] a stipulated judgment for child support is void absent a judicial determination of the validity of any constitutional waiver . . . .”
 
 (County of Los Angeles
 
 v.
 
 Soto
 
 (1984) 35 Cal.3d 483, 492, fn. 4 [198 Cal.Rptr. 779, 674 P.2d 750].)
 
 Tillett
 
 's reliance on
 
 County of Los Angeles
 
 v.
 
 Superior Court (Holley), supra,
 
 102 Cal.App.3d 926 may have been misplaced. The only issue in
 
 Holley
 
 was whether the court could order the county to pay appointed counsel fees: “The county does not contest the appointment itself [per
 
 Salas),
 
 but [] contends [] the court erred in ordering it to pay attorneys’ fees and costs in that such expenditure of public moneys has not been authorized by the Legislature . . . .”
 
 (Id.
 
 at p. 929.) Presumably, the lower court action against the parent in
 
 Holley
 
 involved both paternity and support, hence the county’s concession and the court’s perfunctory citation to
 
 Salas.
 

 [5]
 

 The version of Welfare and Institutions Code section 11350 in effect until 1992 did limit reimbursement to “the amount of aid paid to the family during such period of separation or desertion limited by such parent’s reasonable ability to pay during that period ...”
 

 [6]
 

 Remedial legislation is one of the exceptions to the usual rule that statutes are treated as prospective only.
 
 (Andrus
 
 v.
 
 Municipal Court
 
 (1983) 143 Cal.App.3d 1041, 1046-1048 [192 Cal.Rptr. 341].)
 

 [7]
 

 We do note a gross inconsistency in the statute, though. It requires “[t]he amount of support which would have been specified,” based, however, on “the appropriate child support guidelines currently in effect.”