Filed 2/2/23  P. v. Mathews CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B313909 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. NA113308 |
| v. | |
| TONEY ROBERT MATHEWS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Laura L. Laesecke, Judge.  Affirmed.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Toney Robert Mathews of attempted murder and several other crimes after he struck his girlfriend in the head with a machete, leaving her in a persistent vegetative state.  On appeal, Mathews argues his case should be remanded for resentencing in accordance with Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) and Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill 518), both of which altered trial courts' sentencing discretion.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The People charged Mathews with attempted murder (Penal Code, §§ 187, subd. (a), 664; count 1),[1] injuring a spouse/cohabitant (§ 273.5, subd. (f)(1); count 2), assault with a deadly weapon (§ 245, subd. (a)(1); count 3), two counts of contempt of court (§ 166, subd. (c)(1); counts 4 & 12), and battery on a spouse/cohabitant (§ 243, subd. (e)(1); count 11).  On counts 1 and 2, the People alleged Mathews personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)), and on counts 1, 2, and 3, the People alleged Mathews inflicted great bodily injury (GBI) under circumstances involving domestic violence (§ 12022.7, subd. (e)).

At trial, the People presented evidence showing the following:

On the morning of October 5, 2019, Alexis Nunez was working at a gas station when she saw Mathews kicking and punching his girlfriend, Jessica W.  Jessica was on the ground in a fetal position, covering her head and calling out for help.

---

[1]    Statutory references are to the Penal Code.

2

Mathews said he was teaching Jessica a lesson because she had not come home the night before.

About a month later, on November 13, 2019, Cassandra Anderson saw Mathews with his hand around Jessica's throat. Jessica yelled for help. Mathews struck Jessica with what Anderson described as a two-foot long machete. Anderson ran over to Jessica, who was bleeding from her mouth, nose, and ears. Mathews got in a car and drove away. He later told someone he hit Jessica with a metal pipe and thought she might be dead.

When paramedics arrived, Jessica was lying on the ground, unresponsive but breathing. She had a half-inch laceration on her head that caused a traumatic brain injury. Paramedics took her to a hospital, where surgeons removed part of her skull and performed a tracheotomy. As of October 27, 2020, Jessica remained hospitalized in a vegetative state. She continued to be completely unresponsive, was unable to move her body, and relied on a feeding tube.

Mathews testified in his own defense. According to Mathews, on the night of November 13, 2019, he started walking toward Jessica and she yelled at him to get away from her. Jessica ran across the street and an SUV hit her. Mathews went over to the SUV and started beating on its window. The SUV drove off. Some men approached Mathews with weapons, so Mathews fled in his car.

Mathews stipulated that he had two prior domestic violence convictions, one in February 2016 and one in March 2019. In connection with the March 2019 conviction, a court issued a 10-year criminal protective order prohibiting Mathews from having contact with Jessica.

The jury convicted Mathews as charged, and it found true all the enhancement allegations except the weapon allegation on count 2. The court sentenced Mathews to life with the possibility of parole on count 1, plus the upper term of five years for the GBI enhancement and one year for the weapon enhancement. On count 11, the court imposed a concurrent term of 364 days in jail. The court also imposed, but stayed under section 654, the following: on count 2, the upper term of five years plus the upper term of five years for the GBI enhancement; on count 3, the upper term of four years plus the upper term of five years for the GBI enhancement; on count 4, 364 days in jail; and on count 12, 364 days in jail.

The court explained that it chose to impose upper term sentences because "this is a very aggravating set of events," Mathews had a history of abusing Jessica, and he has a criminal history, including a prior misdemeanor and felony. With respect to the GBI enhancement on count 1, the court noted that it chose to impose the high term "because of the gravity of the injuries" Mathews inflicted on Jessica.

Mathews timely appealed.

## DISCUSSION

### 1. *The court's failure to comply with Senate Bill 567 was harmless*

Mathews contends his case must be remanded for resentencing in accordance with Senate Bill 567.

When the trial court sentenced Mathews, section 1170 provided, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (Former § 1170, subd. (b).) Under this provision,

4

the trial court was free to impose an upper term sentence based on any aggravating circumstances it deemed significant, so long as they were reasonably related to the sentencing decision. (*People v. Moberly* (2009) 176 Cal.App.4th 1191, 1195–1196.) "An aggravating circumstance is a fact that makes the offense 'distinctively worse than the ordinary.' " (*People v. Black* (2007) 41 Cal.4th 799, 817 (*Black*).) The California Rules of Court provide a non-exhaustive list of aggravating circumstances, including that the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness. (Cal. Rules of Court, rule 4.421.)

While Mathews's appeal was pending, Senate Bill 567 took effect. It restricts a trial court's discretion to impose an upper term sentence. Effective January 1, 2022, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) The court also may "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id*., subd. (b)(3).)

The parties agree—as do we—that, because Mathews's case was not yet final when Senate Bill 567 went into effect, he is entitled to the retroactive benefit of the ameliorative legislation. (See *In re Estrada* (1965) 63 Cal.2d 740, 744–745 (*Estrada*); *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

5

The parties disagree, however, as to the proper disposition. Mathews contends that, because—when imposing the upper terms on counts 2 and 3 and the GBI enhancements on counts 1, 2, and 3—the trial court relied on aggravating circumstances not stipulated to nor found true by the jury, we must remand the case for resentencing. The Attorney General contends remand is unnecessary because the trial court's failure to apply the new law was harmless.

Courts of Appeal have articulated several harmless error standards to determine whether remand is required when a trial court failed to comply with the amended version of section 1170. Under one standard—articulated in *People v. Flores* (2022) 75 Cal.App.5th 495—the error is harmless if the reviewing court determines beyond a reasonable doubt that the jury would have found true at least one aggravating circumstance. *(Id.* at pp. 500–501.) Under another standard—articulated in *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*)—the reviewing court first considers whether, beyond a reasonable doubt, the jury would have found true all the aggravating circumstances. If so, the error is harmless. If not, the reviewing court considers whether it is reasonably probable the trial court would have imposed a more favorable sentence had it not considered the improper factors. (*Id.* at pp. 464–467.) More recently, the court in *People v. Zabelle* (2022) 80 Cal.App.5th 1098, articulated a modified version of the *Lopez* standard that also asks whether it is reasonably probable the jury would have found true all the aggravating circumstances. (*Zabelle*, at pp. 1110–1113; see *People v. Dunn* (2022) 81 Cal.App.5th 394, 405–410.)

Both the *Flores*, *supra*, 75 Cal.App.5th 495, and *Lopez* standards suffer from the same problem: they fail to account

6

for the fact that the retroactive application of Senate Bill 567 raises both federal constitutional and state statutory issues, which are subject to different harmless error standards. Like the court in *Zabelle*, we think the proper course is to analyze those issues separately. To the extent there is a constitutional violation, we apply the federal *Chapman*[2] standard and ask whether, beyond a reasonable doubt, the jury would have found true at least one aggravating circumstance. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 838–839 (*Sandoval*).) If there is a statutory violation, we apply the state *Watson*[3] standard and ask whether it is reasonably probable the jury would have found true all the aggravating circumstances on which the trial court relied. If so, the error is harmless. (See *People v. Breverman* (1998) 19 Cal.4th 142, 177–178 (*Breverman*).) If not, we consider whether it is reasonably probable the court would have imposed a more favorable sentence had it not relied on the improper factors. (See *People v. Avalos* (1984) 37 Cal.3d 216, 233.)

We consider the constitutional issue first. In *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*), the United States Supreme Court held that, with the exception of a defendant's prior convictions, the Sixth Amendment requires that a jury determine the facts that render a defendant eligible for an upper term sentence. (*Id.* at pp. 288–289.) The California Supreme Court subsequently held that, so long as one aggravating circumstance has been established consistently

---

[2]     *Chapman v. California* (1967) 386 U.S. 18.

[3]     *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).

7

with Sixth Amendment principles, the federal constitution does not prohibit a trial court from relying on additional aggravating circumstances to impose an upper term sentence. (*Sandoval, supra*, 41 Cal.4th at pp. 838–839; see *Black, supra*, 41 Cal.4th at p. 813.)

Here, it appears the trial court relied on three aggravating circumstances to impose the upper term sentences: (1) Mathews's history of abusing Jessica; (2) Mathews's criminal history; and (3) the severity of Jessica's injuries. Because one of those circumstances concerns Mathews's prior convictions—and because the Sixth Amendment requires only the existence of a single aggravating circumstance in order to impose an upper term—the court's selection of the upper term sentences does not violate the federal constitution. (See *Cunningham, supra*, 549 U.S. at pp. 288–289; *Sandoval, supra*, 41 Cal.4th at p. 839.)

That Mathews's sentence passes constitutional muster, however, does not end our inquiry. We also must determine whether the court complied with section 1170. Unlike the federal constitution, the current version of section 1170 requires all aggravating circumstances relied on by the court—except for the defendant's prior convictions, based on a certified record of conviction—be found true by the trier of fact or stipulated to by the defendant.[4] (§ 1170, subd. (b)(2), (3).)

---

[4] Section 1170 does not explicitly forbid a trial court from relying on its own factual findings in addition to those found true by the trier of fact or stipulated to by the defendant. However, section 1170, subdivision (b)(3) states, "the court may consider the defendant's prior convictions in determining sentencing . . . without submitting the prior convictions to a jury." This implies

8

At trial, Mathews stipulated that he suffered prior domestic violence convictions, at least one of which involved Jessica. Accordingly, the trial court's reliance on two of the three aggravating circumstances—Mathews's history of abusing Jessica and his criminal history—was consistent with Senate Bill 567. Mathews, however, did not stipulate to the severity of Jessica's injuries, and the issue was not submitted to the jury.[5] The court's reliance on that circumstance, therefore, violated Senate Bill 567, and we must remand for resentencing unless the error was harmless.

---

the court may not consider other factors that were not submitted to the jury. (See *In re J.W.* (2002) 29 Cal.4th 200, 209 ["the expression of one thing in a statute ordinarily implies the exclusion of other things"].) This interpretation is consistent with the legislative history of Senate Bill 567. A number of legislative committee reports and analyses of Senate Bill 567, for example, state the bill requires the aggravating circumstances relied on by the court at sentencing be found true by the trier of fact or admitted by the defendant. (See, e.g., Sen. Com. on Public Safety, Analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) April 13, 2021, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended May 20, 2021, p. 1; Assem. Com. on Appropriations, Analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended July 1, 2021, p. 1; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended May 20, 2021, p. 1.)

[5] While the issue of the infliction of GBI was submitted to, and found true by, the jury, it seems the trial court relied on facts related to the severity of Jessica's injuries that went beyond the jury's finding.

Section 1170's requirement that *all* aggravating circumstances relied on by the court (except for the defendant's prior convictions) be found true by the trier of fact or stipulated to by the defendant is a purely state-created right. "[A]ny state law right to a jury determination of particular issues is qualified in turn by the appellate review standards set forth in article VI, section 13 of the California Constitution," and subject to the *Watson* harmless error test. (*Breverman, supra*, 19 Cal.4th at pp. 177–178.) Under that test, an error "is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*Id*. at p. 165; see *Watson, supra*, 46 Cal.2d at p. 836.) Therefore, with respect to any aggravating factors on which the trial court relied that should have been submitted to the jury, we must ask whether it is reasonably probable that the jury would have found them true and, if not, whether it is reasonably probable that the court would have imposed the same sentence absent those circumstances.

Applying that test here, we conclude the court's reliance on the severity of Jessica's injuries was harmless. The record shows Jessica suffered a traumatic brain injury that caused her to be in a persistent vegetative state. Surgeons had to remove part of her skull and perform a tracheotomy. Nearly a year after the incident, she remained hospitalized, completely unresponsive, and unable to move her body. At trial, Mathews did not dispute this evidence or in any way challenge the severity of Jessica's injuries. On this record, it is reasonably probable the jury would have found Mathews caused Jessica to suffer injuries well beyond that required for the offenses and the GBI enhancements. (See, e.g., *People v. Quinonez* (2020) 46 Cal.App.5th 457, 464

10

[abrasions, lacerations, and bruising can constitute GBI]; *People v. Medellin* (2020) 45 Cal.App.5th 519, 529 [injury that required three stiches and " 'hurt for a few days' " was sufficient for a GBI enhancement].)  The trial court's reliance on the severity of Jessica's injuries to impose the upper term sentences, therefore, was harmless.

2. ***Remand for resentencing under Assembly Bill 518 would be futile***

Mathews contends his case must be remanded for resentencing in accordance with Assembly Bill 518.

When the trial court sentenced Mathews, section 654 provided that if an act or omission is punishable in different ways by different provisions of law, the trial court may punish the defendant only once, but must impose punishment under the provision that provides for the longest potential term of imprisonment.  (Former § 654, subd. (a).)  Mathews's convictions on counts 1, 2, and 3 were premised on the same acts.  The court, therefore, imposed the punishment on count 1—a life term— and stayed the punishment on counts 2 and 3—which provided maximum terms of five years and four years, respectively.

While Mathews's appeal was pending, Assembly Bill 518 went into effect.  It removed section 654's requirement that trial courts impose the provision that provides the greatest possible sentence.  Under the amended statute, "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)  If Mathews had been sentenced under this version of the law, the trial court could have stayed the sentence on count 1 and imposed the sentence on either count 2 or count 3.

11

The parties agree—as do we—that, because Mathews's case was not yet final when Assembly Bill 518 went into effect, he is entitled to the retroactive benefit of the ameliorative legislation. (*Estrada, supra,* 63 Cal.2d at pp. 744–745; *People v. Sek* (2022) 74 Cal.App.5th 657, 673.) Once again, however, the parties disagree as to the proper disposition. Mathews urges us to remand for resentencing; the Attorney General contends remand would be futile because it is apparent the court would not change its sentencing decisions.

Generally, " 'when the record shows that the trial court proceeded with sentencing on the . . . assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' [Citation.] But if ' "the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required." ' [Citation.]" (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.)

*People v. Jones* (2019) 32 Cal.App.5th 267, is instructive. In that case, the defendant sought remand for resentencing in response to a new law that gave trial courts discretion to strike serious felony prior enhancements. (*Id.* at p. 272.) In declining to remand the case, the court relied on the trial court's statements that imposing a lengthy sentence gave it " 'great satisfaction,' " the defendant had " 'earned' " the sentence, and there was " 'no shortage' of aggravating factors." (*Id.* at p. 274.)

The court also pointed out that the trial court chose to impose the upper term on one of the counts, despite having already imposed a life with parole sentence. (*Ibid*.) The court concluded that, in light of the trial court's statements and sentencing decisions, remand would be futile. (*Id*. at pp. 274–275.)

The same is true here. The trial court had no shortage of opportunities to exercise leniency when it sentenced Mathews. Among other things, the court had discretion to select from the triad on count 2, count 3, and the three GBI enhancements. In each instance, the court imposed the maximum possible sentence, despite having already imposed a life term on count 1. The court also expressed its belief that "this is a very aggravating set of events," and Mathews had committed a particularly serious attempted murder. Given the court's statements and sentencing choices, it is apparent it would not impose a different sentence if given the opportunity. Under these circumstances, remand would be futile and a waste of judicial resources. (See *People v. McVey* (2018) 24 Cal.App.5th 405, 419 [declining to remand case for resentencing related to a firearm enhancement, noting the trial court imposed the highest possible term for the enhancement].)

## DISPOSITION

We affirm the judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.